UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DANIEL LORBER,

Plaintiff,

-against-

JACOB LEW, SECRETARY DEPARTMENT OF
TREASURY, INTERNAL REVENUE SERVICE;
ROSEMARY J. SERETI (in her individual capacity);
DAVID W. HORTON (in his individual capacity);
SHARON R. PORTER (in her individual capacity); AND
PAMELA J. DRENTHE (in her individual capacity),

Defendants.

KIMBA M. WOOD, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/15/17

15 Civ. 9995 (KMW) (BCM)

**MEMORANDUM OPINION
AND ORDER**

Plaintiff, Daniel Lorber, an openly gay male who was employed as a manager at the

Internal Revenue Service ("IRS"), brings this action for discrimination and retaliation against

Jacob Lew, the then-Secretary of the Treasury, under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq.*, and against four individuals at the IRS in their individual capacity—

Rosemary J. Sereti, David W. Horton, Sharon R. Porter, and Pamela J. Drenthe—pursuant to

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Defendants move to dismiss four counts of Plaintiff's amended complaint. For the reasons stated

below, Defendants' motion is GRANTED in part and STAYED in part.

## I. BACKGROUND[1]

At all relevant times, Plaintiff worked as a Supervisory Internal Revenue Agent—a Front

Line Manager position—in the Large Business and International ("LBI") division, International

Individual Compliance ("IIC") subdivision, of the IRS. Am. Compl. ¶¶ 18, 44, ECF No. 39.

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for purposes of Defendants' motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss . . . for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint.").

Supervisory Internal Revenue Agents are managed by Senior Managers, who oversee day-to-day operations of their subdivision. *Id.* ¶ 23. Under IRS merit promotion rules, the IRS may not non-competitively promote a Front Line Manager to a Senior Manager. *Id.* ¶ 52. A Front Line Manager can receive a temporary assignment as a Senior Manager if that individual is a member of the Senior Manager Readiness Program ("SMRP"), *id.* ¶ 29, but participation in the SMRP is not a guarantee of a permanent Senior Manager position, *id.* ¶ 30, and neither participation in nor graduation from the SMRP is required to become a Senior Manager, *id.* ¶ 31.

Prior to July 21, 2014, a potential candidate for a Senior Manager position was required to obtain an Evaluation of Managerial Potential ("EMP"), in which the candidate's immediate manager would rank the employee and the candidate's second-level manager would approve or disapprove the rankings. *Id.* ¶¶ 32, 33, 35. The score in each category could be "Ready Now," "Ready in 1-2 years," or "Ready in 3-5 years." *Id.* ¶ 34. After July 21, 2014, a potential candidate was instead required to obtain a Leadership Succession Review ("LSR") from his immediate manager, which would then be approved or disapproved by the candidate's second-level manager. *Id.* ¶¶ 39-41.

In April 2012, the IRS announced that Carmen Hahn, a heterosexual female employee, was selected to temporarily act in a Senior Manager position, for which the IRS indicated an individual from SMRP would be chosen. *Id.* ¶ 51, 52, 56. In June 2013, Plaintiff was made aware of an intranet page that listed IRS Front Line Managers and other employees who were in or had graduated from the SMRP. *Id.* ¶ 55. Plaintiff discovered that Hahn had never participated in the SMRP. *Id.* ¶ 56. Plaintiff alleges that Hahn was selected for the Senior Manager position by LBI executive Sereti, the then-Director of IIC, who was aware at the time of Hahn's promotion that (1) Hahn was not a SMRP candidate, (2) there were male SMRP candidates, (3)

2

Hahn was not rated "Ready Now" on her EMP, and (4) other, more qualified male candidates were rated "Ready Now." *Id.* ¶¶ 60-62.

When Hahn became Plaintiff's manager, she rated him as not being "Ready Now," without an objectively reasonable basis, despite Plaintiff's former manager's assessment that he was ready for senior management. *Id.* ¶ 65, 73. This rating prevented Plaintiff from making the "best qualified" list for several Senior Manager positions. *Id* ¶ 64. Plaintiff claims that Hahn gave him this rating to make him less likely to be chosen for a permanent Senior Manager position, for which females were also applying. *Id.* ¶ 66. Indeed, Plaintiff believes that Hahn has never rated a female employee as being anything less than "Ready Now" for Senior Manager positions. *Id.* ¶ 68.

Plaintiff alleges that between approximately 2012 and 2014, Sereti was the selecting official for eleven positions, of which ten went to females. *Id.* ¶ 69-70. In March 2013, the IRS cancelled a Vacancy Announcement, for which Plaintiff had made the "best qualified" list, to prevent him from obtaining a Senior Manager position. *Id.* ¶ 74. Instead, a female employee, Jackie Rookwood, was non-competitively placed in the position. *Id.* ¶ 75. In April 2013, a female employee, Brenda Jackson, was non-competitively promoted to a Senior Manager position. *Id.* ¶¶ 79-82. The IRS also non-competitively placed Roseanne Perricelli, another female employee, into a Senior Manager position. *Id.* ¶ 83.

Plaintiff also alleges that less qualified heterosexual male candidates were chosen for promotion over more qualified homosexual male candidates, such as Plaintiff. *Id.* ¶ 84. In September 2012, Horton, a heterosexual male and the then-Director of IIC, non-competitively selected Aureo Nieves, also a heterosexual male, for a Senior Manager position for which he was not eligible. *Id.* ¶¶ 86-88. Horton knew that Nieves was less qualified than Christopher Holmes,

3

a gay man, who was not considered for the position. *Id.* ¶¶ 90-91. In June 2013, Plaintiff

discovered that Ted Curtis, another heterosexual male, was non-competitively selected for a

Senior Manager position, for which Plaintiff was substantially more qualified. *Id.* ¶ 92-93.

Plaintiff was not considered for this position because the IRS allegedly did not want a

homosexual male in a Senior Manager position. *Id.* ¶ 95.

This same preference for heterosexual men over homosexual men is evidenced with

respect to positions for which competition was numerically scored. For instance, in July 2012,

Plaintiff applied for a Senior Manager position and received a ranked score of 91, which was the

minimum qualifying score, but Horton and Porter directed that Plaintiff be hold that he did not

make the cutoff score and was not qualified for the position. *Id.* ¶¶ 100-04. Similarly, in June

2013, Plaintiff applied for another Senior Manager position for which he was well qualified. *Id.*

¶¶ 105-06. Horton and Judith McNamara were involved in the selection process. *Id.* ¶ 107.

Plaintiff was told that he did not make the "Best Qualified" score for the position, and a

heterosexual male, Robert Benesch, was selected for the position. *Id.* ¶¶ 108-09. In July 2014,

Plaintiff was informed that the "Best Qualified" cutoff was set at a number that guaranteed that

his score would not be included in the list of eligible applicants to be interviewed. *Id.* ¶ 110.

Plaintiff alleges that McNamara has made comments to other Frontline Managers that Plaintiff

would never be a Senior Manager. *Id.* ¶ 111.

Plaintiff participated in an Equal Employment Opportunity ("EEO") case filed by a

coworker in March 2013, and filed his own EEO complaint in July 2013. *Id.* ¶¶ 113, 114.

Plaintiff alleges that Horton, Sereti, Drenthe, Jeannie Fisher, Hahn, and Porter engaged in a

pattern of retaliatory behavior against Plaintiff as a result of those activities. *Id.* ¶ 115. For

instance, in March 2013, the IRS cancelled a Senior Manager vacancy announcement for which

4

Plaintiff would have been the best qualified candidate. *Id.* ¶ 116. That same month, Hahn "distributed information about Plaintiff's disability and reasonable accommodation request to one of the Plaintiff's employee who had no need to know the information so as to humiliate, embarrass, and discredit Plaintiff as a Front Line Supervisor." *Id.* ¶ 117. In August 2013, Barbara Tobias, Plaintiff's supervisor at that time, forwarded her assessment of Plaintiff to Drenthe, a senior executive, who told Tobias that she expected Tobias not to send her a "high appraisal" of Plaintiff. *Id.* ¶¶ 118-26. When Tobias sent a "high assessment" of Plaintiff to Horton, Plaintiff's second-level supervisor, he refused to sign-off on the assessment. *Id.* ¶¶ 127-29. Horton also worked with Fisher, Plaintiff's supervisor effective September 2013, to lower Plaintiff's rating and annual evaluation. *Id.* ¶¶ 130-132. Plaintiff's ratings were lowered and negative language was added to his evaluation. *Id.* ¶ 132, 134. These ratings are "instrumental to promotion opportunities, raises, work assignments, bonuses, temporary details and other terms and conditions of Plaintiff's employment." *Id.* ¶ 133.

Other retaliatory acts followed. *Id.* ¶ 135. In December 2013, Plaintiff was excluded from a managers meeting with the LBI Deputy Commissioner. *Id.* ¶ 136. Also in December 2013, the IRS purposefully placed a Senior Manager position outside of Plaintiff's post of duty to prevent him from applying for the position. *Id.* ¶ 137. In January 2014, Fisher disclosed information about Plaintiff's personal and private medical condition to other Front Line Managers who had no need to know, and Fisher harassed Plaintiff about his personal leave. *Id.* ¶¶ 138-39.

In support of his hostile work environment claim, Plaintiff alleges that he has been: questioned about his personal leave usage; accused of being Absent Without Leave (AWOL); excluded from meetings; ridiculed based on his disability, his request for a reasonable

accommodation, and his performance evaluation; falsely accused of being late in completing assignments; given a lowered LSR review; not assigned substantial daily responsibilities or duties; assigned minor and non-substantive tasks inconsistent with his job description; had employees removed from his supervision; prohibited from assigning tasks to his subordinate employees or review their work; and not selected for two vacancy announcements for Senior Manager positions. *Id.* ¶ 157. Plaintiff alleges that similarly situated females did not have these actions taken against them. *Id.*

Defendants filed their partial motion to dismiss on June 28, 2016. ECF No. 42. The case was reassigned to the undersigned on November 22, 2016.

## II. LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)

6

(quoting *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

## III. DISCUSSION

Defendants move to dismiss count two (gender-based hostile work environment), count four (retaliatory hostile work environment), and count five (discrimination based on nonconformity with male sex stereotypes) pursuant to Rule 12(b)(6) for failing to allege facts sufficient to state a claim, and to dismiss count six (a *Bivens* action alleging violations of the Fifth Amendment based on sexual orientation discrimination) pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. Def. Mem. 1, ECF No. 43.

### A. Counts Two and Four: Gender-Based and Retaliatory Hostile Work Environment

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (alteration in original) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

The first prong "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). The Court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is

7

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alfano*, 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano,* 294 F.3d at 374).

To satisfy the second prong, if, as here, it is a supervisor harassing the plaintiff, "the employer is liable for a hostile work environment created by the supervisor unless the employer can establish 'that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.'" *Charley v. Total Office Planning Servs., Inc.*, No. 14 Civ. 85, 2016 WL 4705164, at *3 (S.D.N.Y. Aug. 23, 2016) (quoting *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)). Because Defendants do not contest this second prong, the Court need not address it.

Plaintiff's claim is predicated on allegations that, over the course of several years, supervisors passed over him for promotions, gave him lower performance evaluations to prevent him from being promoted, intentionally excluded him from consideration for promotions, excluded him from meetings, ridiculed him or embarrassed him, gave him more menial tasks and less substantive work, and removed his insubordinates. Although these are serious allegations, they do not amount to a hostile work environment, which requires that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting

8

*Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)); *see, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment existed despite the facts that "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (dismissing hostile work environment claim where plaintiff alleged exclusion from staff meetings; questioning about overtime hours; additional job scrutiny; diminished job responsibilities; being yelled at, insulted, and belittled; being denied necessary documents; and being subject to a racially offensive remark), *aff'd,* 488 F. App'x 530 (2d Cir. 2012).   Furthermore, Plaintiff has not alleged facts to suggest that many of these acts were motivated by his sex.   Although Plaintiff pleads "[u]pon information and belief, similarly situated female employees" did not suffer the same hardships Plaintiff endured, he does not provide factual allegations that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).   Plaintiff has failed to state a claim for hostile work environment.

To establish a retaliatory hostile work environment claim, a plaintiff "must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment." *Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015) (quoting *Rasco v. BT Radianz,* No. 05 Civ. 7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009)). Not all of Plaintiff's allegations of discriminatory hostile work environment are also alleged in his retaliatory hostile work environment claim. *Compare* Am. Compl. ¶ 157 (listing sixteen incidents regarding count two), *with id.* ¶ 170 (listing ten incidents regarding count four).   As

9

Plaintiff fails to state a claim for gender-based hostile work environment, his retaliatory hostile work environment claim must also fail.

Accordingly, Defendants' motion to dismiss counts two and four is GRANTED.

B. Count Five: Discrimination Based on Sexual Orientation or Nonconformity with Male Sex Stereotypes

In their motion to dismiss, Defendants argue that Plaintiff has failed to state a claim for discrimination under Title VII for nonconformity with male sex stereotypes, and rulings from the Second Circuit Court of Appeals foreclose Title VII claims based exclusively on sexual orientation discrimination. *See* Def. Mem. 19-21 (citing *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005)); *see also Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000). In his opposition, Plaintiff acknowledges that "Title VII does not recognize a cause of action for Plaintiff's gender stereotyping claim." Pl. Opp. 14, ECF No. 46-1. The Court agrees that Plaintiff fails to state a claim for discrimination based on noncomformity with male sex stereotypes.

However, the Second Circuit has recently held oral argument in two cases that present the issue of whether Title VII protects against sexual orientation discrimination. *See Zarda v. Altitude Express*, No. 15-3775 (2d Cir. argued Jan. 5, 2017); *Christiansen v. Omnicom Group, Inc., et al.*, No. 16-748 (2d Cir. argued Jan. 20, 2017). Accordingly, adjudication of Plaintiff's fifth count is STAYED pending the outcome of these cases.

C. Discrimination in Violation of the Fifth Amendment

Plaintiff asserts constitutional claims against the individual defendants in their personal capacities under *Bivens*. A *Bivens* action is allowed where there are "no special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396.

10

As the Second Circuit has long established, the "the comprehensiveness of available statutory schemes" to address a plaintiff's injury is one such factor counseling hesitation. *Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009) (citing *Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005)). "[I]t is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson*, 398 F.3d at 166–67.

Defendants argue that the Civil Service Reform Act ("CSRA"), 5 C.F.R. § 1021.191, precludes a *Bivens* remedy against the individual defendants. Def. Mem. 21-25. The CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). "The CSRA represents Congress's comprehensive identification of the employment rights and remedies available to federal civil service personnel." *Bamba v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 7466, 2012 WL 3020034, at \*3 (S.D.N.Y. July 24, 2012) (quoting *Dotson*, 398 F.3d at 160), *aff'd*, 533 F. App'x 33 (2d Cir. 2013). Courts have routinely held that "the remedial scheme established by the CSRA precludes federal civil service employees from challenging adverse employment decisions through *Bivens* actions for money damages." *Id.* (quoting *Dotson*, 398 F.3d at 168); *see also, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 368 (1983) ("Because [plaintiff's First Amendment] claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy."); *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 405 (2d Cir. 2015) ("If [the plaintiff] had been directly employed by the federal government, his exclusive remedy would lie under the CSRA, and he would be precluded from

11

bringing a *Bivens* claim [for a violation of the Due Process Clause of the Fifth Amendment].").

Accordingly, Defendants' motion to dismiss Plaintiff's *Bivens* claim must be GRANTED.[2]

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss counts two, four, and six

is GRANTED. Adjudication of count five is STAYED pending the outcome of the cases that

are now before the Second Circuit. The Clerk of Court is directed to terminate the motion at

ECF No. 42.

SO ORDERED.

Dated: February 13, 2017
New York, New York

*Kimba M. Wood*

KIMBA W. WOOD
United States District Judge

---

[2] Plaintiff makes two arguments in opposition. First, he cites to the Supreme Court's decision in *Davis v. Passman*, 442 U.S. 228 (1979), which stated that a plaintiff who was not covered by Title VII was not precluded by Title VII from bringing a *Bivens* action for discrimination. Pl. Opp. 16. However, *Davis* was decided only one year after the CSRA was enacted and therefore did not consider the preemptive effect of the CSRA on that plaintiff's claims. Second, Plaintiff contends that the Merit Systems Protection Board ("MSPB"), a component of the CSRA, does not have jurisdiction over sexual orientation discrimination, and therefore Plaintiff does not have a remedy for such discrimination. Pl. Opp. 17-19. Defendants respond that a complaint through the Equal Employment Opportunity Commission would be the proper venue for such a complaint. Def. Reply 9-10. Furthermore, "'[t]he absence of statutory relief for a constitutional violation' is not sufficient, by itself, for courts to imply a cause of action for money damages against the official causing the violation." *Dotson*, 398 F.3d at 167 (alteration in original) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988)).

12